Manfred P. Muecke (SBN 222893)
**Manfred, APC**
600 W Broadway Ste 700
San Diego CA 92101
Tel: (619) 550-4005
Fax: (619) 550-4006
mmuecke@manfredapc.com

*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| KARISSA GATES AND JANINE HWANG, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>UPFIELD US INC.,<br><br>Defendant. | Case No.<br><br><br><br>**Class Action Complaint**<br><br>**Jury Trial Demanded** |

Plaintiffs Karissa Gates ("Plaintiff Gates") and Janine Hwang ("Plaintiff Hwang") (collectively, "Plaintiffs") allege upon information and belief, except for allegations about Plaintiffs, which are based on personal knowledge:

I.    **VEGETABLE OIL BLENDS**

1.      In response to a butter shortage in the late nineteenth century, a French chemist created an emulsion of vegetable fats and water which was dyed yellow.

2.      Today, these vegetable oil blends are comprised mainly of palm oil, soybean oil and canola oil.

3.      Where their fat content is equal to or exceeds 80 percent, its formal name is margarine.

4.      According to the United States Department of Agriculture ("USDA"),

1

consumption of vegetable oil blends recently hit its lowest level since 1942, while butter has reached its highest level in fifty years.

5.  This is due to several factors.

6.  First, according to research firm Mintel, "consumers [are] increasingly turn[ing] to butter over margarine/[vegetable oil] spreads for its natural appeal," and a "preference for less processed foods."

7.  Butter is made by gently churning cream and milk from cows, without chemicals or additives.

8.  In contrast, vegetable oils are heavily refined in the presence of chemical catalysts such as nickel and cadmium.

9.  Second, consumers are more aware of the healthier profile of butter compared to vegetable oil alternatives.

10.  Butter contains heart healthier fats, while vegetable oils contain harmful trans fats, a result of hydrogenation and interesterification.

11.  Butter contains calcium and vitamins A and D, while vegetable oils have no comparable nutritional value due to the processing needed to render them palatable.

12.  Third, vegetable oil spreads are considered ultra-processed foods ("UPF"), frowned upon by nutrition authorities and public health bodies.

13.  To counter the decline of vegetable oil spreads, sellers of vegetable oil blends have sought to promote newer types of oils, known for their healthy qualities.

14.  One of the most popular oils of the last 15 years is avocado oil.[1]

15.  In contrast to highly and chemically refined oils from palm, soybean and canola, avocado oil is extracted from the pulp of avocados without additives or harsh processing.

16.  Unlike typically used vegetable oils which contain harmful trans fats,

---

[1] Audrey Altmann, Why consumers are reaching for the avocado oil, Smart Brief, Mar. 29, 2023.

CLASS ACTION COMPLAINT
*Gates et. al. v. Upfield US Inc.*, No.

avocado oil has high levels of heart-healthy fats which help control cholesterol.

17.    Whereas standard vegetable oils have no flavor or aroma, avocado oil is known for its nutty and grassy taste.

18.    Avocado oil also contains immunity-promoting antioxidants, which help slow down the aging process.

## II.    PRODUCT LABEL EMPHASIZES AVOCADO OIL

19.    It is recognized that "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging to evaluate [any] product," thereby "develop[ing] sensory expectations" about its composition.[2]

20.    To appeal to consumer demand for avocado oil and their avoidance of palm oil, soybean oil and canola oil, Upfield US Inc. ("Defendant") sells 79% vegetable oil blends described as "Plant Butter," "Made With Avocado Oil" and "With Avocado Oil," next to ripe green avocados in light green packaging under its Country Crock brand ("Product").



---

[2] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013.



21.     However, "Made With Avocado Oil," "With Avocado Oil," and "Plant Butter" are false, deceptive, and misleading, because instead of a predominant or significant amount of avocado oil, this ingredient is present in a negligible amount, in absolute and relative terms to the other oils used.

22.     This is confirmed by the fine print of the ingredient list on the back of each package.

INGREDIENTS: BLEND OF PLANT-BASED OILS (PALM FRUIT, PALM KERNEL, CANOLA AND AVOCADO OIL), WATER, SALT, PEA PROTEIN, SUNFLOWER LECITHIN, CITRIC ACID,  VITAMIN A PALMITATE, NATURAL FLAVOR, BETA CAROTENE (COLOR).

**INGREDIENTS:** BLEND OF PLANT-BASED OILS (PALM FRUIT, PALM KERNEL, CANOLA AND AVOCADO OIL), WATER, SALT, PEA PROTEIN, SUNFLOWER LECITHIN, CITRIC ACID, VITAMIN A PALMITATE, NATURAL FLAVOR, BETA CAROTENE (COLOR).

INGREDIENTS: BLEND OF PLANT-BASED OILS (SOYBEAN, PALM FRUIT, PALM KERNEL, AND AVOCADO OIL), WATER, SALT, PEA PROTEIN, SOY LECITHIN, CITRIC ACID, NATURAL FLAVOR, VITAMIN E ACETATE, VITAMIN A PALMITATE, BETA CAROTENE (COLOR).

**INGREDIENTS:** BLEND OF PLANT-BASED OILS (SOYBEAN, PALM FRUIT, PALM KERNEL, AND AVOCADO OIL), WATER, SALT, PEA PROTEIN, SOY LECITHIN, CITRIC ACID, NATURAL FLAVOR, VITAMIN E ACETATE, VITAMIN A PALMITATE, BETA CAROTENE (COLOR).

23.    The ingredients, listed in order of predominance by weight, show avocado oil is the smallest part of the vegetable oil blend in the sticks and container. 21 C.F.R. § 101.4(a)(1).

24.    This principle applies to the parenthetical listings of the "Blend of Plant-Based Oils," because "fats and/or oils constitute the predominant ingredient [of the Product], i.e., [] the combined weight of all fat and/or oil ingredients equals or exceeds the weight of the most predominant ingredient that is not a fat or oil [thereby requiring] the listing of the common or usual names of such fats and/or oils in parentheses shall be in descending order of predominance." 21 C.F.R. § 101.4(b)(14).

25.    In the sticks, the two most predominant oils are palm fruit and palm kernel oil, followed by canola oil and finally, avocado oil.

26.    In the container, soybean oil is predominant, followed by palm fruit and palm kernel oil, and finally, avocado oil.

III.    **LABELING IS MISLEADING**

27.    In response to an unregulated environment where companies highlighted the ingredients consumers wanted on their front labels even though these were present in negligible amounts or not at all, the Federal Food, Drug and Cosmetic Act ("FFDCA") set standards to protect the public. 21 U.S.C. § 301 *et seq.*

28.    California adopted these laws through the Sherman Food, Drug, and Cosmetic Law ("Sherman Law"). Cal. Health & Safety Code ("HSC") § 109875 *et seq.*; HSC § 110100 (adopting all FDA labeling regulations).

5

CLASS ACTION COMPLAINT
*Gates et. al. v. Upfield US Inc.*, No.

1    29.    This State's consumer protection statutes were modeled on the Federal

2    Trade Commission Act ("FTC Act"). 15 U.S.C. 45 *et seq*.

3    30.    In considering whether advertising is misleading in a material respect,

4    the FTC Act understands that the effect of advertising includes not just representations

5    made or suggested by words and images, "but also the extent to which [it] fails to

6    reveal facts material in the light of such representations." 15 U.S.C. § 55(a)(1).

7    31.    Likewise, the Sherman Law recognizes that whether a food's labeling is

8    misleading is based on "all representations made or suggested," and "the extent that

9    the labeling [] fails to reveal facts concerning the food." HSC § 110290.

10    32.    The labeling of "Plant Butter Made With Avocado Oil" and "Plant Butter

11    With Avocado Oil" results in the Product being "misbranded," because its "name []

12    includes [] the name of one [] [ingredient, avocado oil] but not all such ingredients,

13    [palm fruit oil, palm kernel oil, soybean oil and canola oil] even though the[se] []

14    ingredients are stated elsewhere in the labeling," on the ingredient list. 21 C.F.R. §

15    101.18(b).

16    33.    The Product is "misbranded," because "Made With Avocado Oil," "With

17    Avocado Oil" and "Plant Butter," next to ripe green avocados in light green packaging

18    is "false or misleading," because it fails to disclose the amount of avocado oil is de

19    minimis or negligible, in absolute and relative terms to its other vegetable oils. 21

20    U.S.C. § 343(a)(1); HSC § 110660.

21    34.    The Product is "misbranded" and misleads consumers because it does

22    not contain a truthful and non-misleading "common or usual name." HSC § 110720

23    21 U.S.C. § 343(i);

24    35.    Neither "Plant Butter Made With Avocado Oil," "Plant Butter With

25    Avocado Oil," "Vegetable Oil Spread" or "Plant-Based Oil Spread" "accurately

26    identif[ies] or describe[s], in as simple and direct terms as possible, the basic nature

27    of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a).

28    36.    Based on the labeling of "Made With Avocado Oil," "With Avocado

6

Oil," avocado oil was the Product's characterizing ingredient. 21 C.F.R. § 102.5(b).

37.    First, avocado oil is a characterizing ingredient because "the proportion of [avocado oil] in the food has a material bearing on [the Product's] price." 21 C.F.R. § 102.5(b).

38.    According to global trading markets, one liter of palm oil costs $0.50.

39.    In contrast, a liter of avocado oil is $13.21, 26 times the price of palm oil.[3]

40.    Second, avocado oil is a characterizing ingredient because its usage has a material bearing on consumer acceptance of this vegetable oil blend.

41.    According to USDA's Economic Research Service ("ERS"), the past 20 years have seen annual consumption of avocados triple from three to nine pounds per person.[4]



42.    In 2015, a leading research and consultancy firm, Nagase America, observed how "The avocado trend is popping up in unique products worldwide," like

---

[3] https://florasquare.co/oils/avocado.html
[4] USDA ERS, Imports play dominant role as U.S. demand for avocados climbs.

sandwiches, toast, cooking products and even desserts, reflected in internet queries.[5]



43.     SmartBrief, a provider of "targeted business news and information by industry," considered "Why consumers are reaching for the avocado oil," and it was because "[they] are replacing the typical oils [palm oil, soybean oil, canola oil] with avocado oil due to its nutritional value and high smoke point."



44.     SmartBrief predicted "Avocado oil is likely to continue entering the mainstream; [with] the market [] expected to grow by over $516 million over roughly

---

[5] Eats Meets West, Global innovations in food and beverage A blog by Nagase America, New Product Launches Go Gaga Over the Avocado Trend, Aug. 25, 2015.

the next five years."

45.    An article in Produce Business recognized that "Avocados continue to captivate the market and consumers."[6]

46.    It quoted an avocado industry insider that "health and indulgence are two of the key trends that have been driving avocado purchases [because] 'Avocados taste great, are full of nutrients, and have good fat and fiber.'"

47.    Third, avocado oil is a characterizing ingredient because "the [Product's] labeling [and] appearance," including "Plant Butter," "Made With Avocado Oil" and "With Avocado Oil," next to ripe green avocados in light green packaging, "create[s] an erroneous impression that [avocado oil] is present in an amount greater than is actually the case." 21 C.F.R. § 102.5(b).

48.    Avocados "are associated with the rise of plant-based and flexitarian diets, which have increased significantly in the last twenty years," compared to diets based on consumption of animal products.

49.    In this context, "Avocados are positioned as a healthy alternative to meat, with high levels of fatty acids."

50.    The term, "plant butter," next to pictures of avocados, "Made With Avocado Oil" and "With Avocado Oil," causes consumers to expect the Product's primary ingredient is avocado oil or at least present in more than a de minimis amount.[7]

51.    Since avocado oil is a characterizing ingredient, the Product's common or usual name, whether "Plant Butter Made With Avocado Oil," "Plant Butter With Avocado Oil," "Vegetable Oil Spread" or "Plant-Based Oil Spread," was required to "include the percentage(s) of [avocado oil]" "on the basis of its quantity in the finished product" so consumers would not be misled about the relative and absolute amount

---

[6] Steven Maxwell, Avocados continue to captivate the market and consumers. September 2023 Produce Business.

[7] Routledge Blog, The Avocado's Sustainability Debate: From Hollywood Trend to a Globalized Food System, Nov. 7, 2023.

CLASS ACTION COMPLAINT
*Gates et. al. v. Upfield US Inc.*, No.

of avocado oil used. 21 C.F.R. § 102.5(b) and 21 C.F.R. § 102.5(b)(1).

52.    The amount of avocado oil was required to "be declared by the words 'containing (or contains) __ percent (or %) _____' or '__ percent (or %) _____' with the first blank filled in with the percentage expressed as a whole number not greater than the actual percentage of [avocado oil]…and the second blank filled in with the common or usual name of [avocado oil]." 21 C.F.R. § 102.5(b)(2).

53.    Consumer watchdog Vani Hari, known to her over one million Instagram followers as "The Food Babe," described Country Crock's Plant Butter Made With Avocado Oil as "Rebranding the same…[regular Country Crock based on non-healthy vegetable oils]." [8]



54.    Hari exclaimed, "What a crock! Products like this make me so angry because [she] used to fall for them all the time."

55.    She noted that "Country Crock Plant Butter [With Avocado Oil] looks

---

[8] https://www.instagram.com/p/Cq6aFzQPSEG/?img_index=1

CLASS ACTION COMPLAINT
*Gates et. al. v. Upfield US Inc.*, No.

like a healthy option…until you read the ingredients and find out that it's basically the same as regular Country Crock spread."

56.    Hari realized that the Country Crock Plant Butter Made With Avocado Oil was a "79% vegetable oil blend," only one percent less than the unhealthy food known as margarine, an 80% vegetable oil blend.

57.    Nevertheless, "Both are mostly soybean oil, which is too high in omega-6 fatty acids that increase the risk of obesity, inflammation, cardiovascular disease, cancer, and autoimmune diseases."

58.    Hari told her followers that "Calling this 'Plant Butter' with 'Avocado Oil' is a slick and shady marketing trick. Don't let your friends fall for it… please share!"

IV.    **CONCLUSION**

59.    Consumers buying vegetable oil spread described as "Plant Butter" "Made With Avocado Oil" or "With Avocado Oil" are trying to avoid highly processed and unhealthy vegetable oils of palm oil, canola oil, and soybean oil in favor of consuming avocado oil.

60.    As a result of the false and misleading representations and omissions, the Product is sold at a premium price, approximately and $3.89 for four sticks (16 oz) and $3.59 for a 10.5 oz container, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

**<u>JURISDICTION</u>**

61.    Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

62.    The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

63.    Plaintiffs are citizens of California.

CLASS ACTION COMPLAINT
*Gates et. al. v. Upfield US Inc.*, No.

64.     Defendant is a citizen of Delaware based on its corporate formation.

65.     Defendant is a citizen of New Jersey and Kansas based on the locations of its principal place of business.

66.     The class of persons Plaintiffs seek to represent includes persons who are citizens of a different state from which Defendant is a citizen.

67.     The members of the proposed class Plaintiffs seek to represent are more than one hundred, because the Product has been sold at grocery stores, big box stores, drug stores, warehouse club stores, convenience stores, in this State and online to citizens of this State.

68.     The Court has jurisdiction over Defendant because it transacts business within California and sells the Product to consumers within California from grocery stores, big box stores, drug stores, warehouse club stores, convenience stores in this State and online to citizens of this State.

69.     Defendant transacts business in California, through the sale of the Product to citizens of California from grocery stores, big box stores, drug stores, warehouse club stores, convenience stores in this State and online to citizens of this State.

70.     Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

71.     Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State.

72.     Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, origin, amount and/or quality, through causing the Product to

12

be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## **VENUE**

73.     Venue is in this District with assignment to the Eastern Division because a substantial part of the events or omissions giving rise to these claims occurred in San Bernadino County, which is where Plaintiffs' causes of action accrued.

74.     Plaintiffs purchased, paid money towards or for, used and/or consumed the Product in reliance on the labeling identified here in San Bernadino County.

75.     Plaintiffs became aware the labeling was false and misleading in San Bernadino County.

76.     Plaintiffs reside in San Bernadino County.

## **PARTIES**

77.     Plaintiff Karissa Gates is a citizen of San Bernardino County, California.

78.     Plaintiff Janine Hwang is a citizen of San Bernardino County, California.

79.     Defendant Upfield US Inc. is a Delaware corporation with a principal place of business in New Jersey and Kansas.

80.     Plaintiffs are like most consumers who are aware that avocado oil is superior to vegetable oils such as palm oil, canola oil and soybean oil from a health and nutrition standpoint.

81.     Plaintiffs are like most consumers who value the taste of avocado oil more than vegetable oils such as palm oil, canola oil and soybean oil.

82.     Plaintiffs are like most consumers who look to the large print and images on a food's front label to see its main ingredients, whether displayed in words or images.

83.     Plaintiffs read, saw and relied on "Made With Avocado Oil," "With Avocado Oil," "Plant Butter," "plant-based oil spread," "vegetable oil spread" and/or pictures of ripe green avocados in light green packaging, to believe the Product was

13

made with a significant and/or predominant amount of avocado oil.

84.    Plaintiffs expected the Product to have more avocado oil than other vegetable oil ingredients or at least an equivalent amount of avocado oil.

85.    Plaintiffs did not expect that avocado oil was the least predominant vegetable oil used in the blend of oils.

86.    Plaintiffs did not expect that the Product was practically equivalent to margarine, because it was a 79% vegetable oil blend, compared to margarine, which is an 80% vegetable oil blend.

87.    Plaintiffs are like most consumers who seek to avoid margarine, because it is made mainly from palm oil, soybean oil and canola oil.

88.    Plaintiffs are like most consumers who seek to avoid margarine, because it is highly processed and known for its detrimental health effects.

89.    Plaintiffs bought the Product with the labeling identified here, including "Plant Butter Made With Avocado Oil" and/or "Plant Butter With Avocado Oil," next to ripe green avocados in light green packaging, at or exceeding the above-referenced price.

90.    Plaintiff Gates purchased the Product between December 2019 and December 2023 at stores including Walmart, Target, CVS, Walgreens and/or Ralphs, in San Bernadino County and/or other areas.

91.    Plaintiff Hwang purchased the Product between December 2019 and December 2023 at stores including Walmart, Target, CVS, Walgreens and/or Ralphs, in San Bernadino County and/or other areas.

92.    Plaintiffs paid more for the Product than they would have had they known the amount of avocado oil was negligible or de minimis, in absolute and relative terms, compared to vegetable oils like palm oil, soybean oil and canola oil, as she would not have bought it or would have paid less.

93.    Plaintiffs paid more for the Product than they would have had they known that "plant butter" meant only one percent difference in fat content from being

labeled as margarine, as she would not have bought it or would have paid less.

94.    The Product was worth less than what Plaintiffs paid, and they would not have paid as much absent Defendant's false and misleading statements and omissions.

95.    Plaintiffs chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

96.    Plaintiffs intend to, seek to, and will purchase the Product again when they can do so with the assurance the Product's representations are consistent with its attributes, features, and/or composition.

97.    Plaintiffs are unable to rely on the representations not only of this Product, but other similar vegetable oil spreads which promote non-traditional oil ingredients because she is unsure whether those representations are truthful.

98.    If Defendant's labeling were to be truthful, Plaintiffs could rely on the labeling of other such products.

## CLASS ALLEGATIONS

99.    This action is brought on behalf of the following class:

> All persons in California who purchased Country Crock Plant Butter bearing the labeling identified here emphasizing avocado oil in California during the statutes of limitations for each cause of action alleged.

100.    Excluded from the Class are (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff and (d) any person that timely and properly excludes himself or herself from the Class.

101.    Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiffs and class members are entitled to damages.

102.    Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive

15

representations, omissions, and actions.

103.   Plaintiffs are adequate representatives because their interests do not conflict with other members.

104.   No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

105.   The class of persons is sufficiently numerous because Defendant has sold the Product with the identified representations for several years throughout this State, at thousands of stores, such as grocery stores, convenience stores, drug stores, big box stores, warehouse club stores, and online, and it was bought by thousands of consumers.

106.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

107.   Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

108.   Plaintiffs seek class-wide injunctive relief because the practices continue.

## CLAIMS FOR RELIEF

### FIRST CLAIM
**Violation of California's Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200, *et seq.***

109.   Plaintiffs repeat and re-allege the allegations in the paragraphs above as if fully set forth herein.

110.   California's Unfair Competition Law, BPC § 17200, *et seq.* ("UCL"), prohibits any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.

111.   Defendant's representations and omissions are "unlawful" because they violate the following provisions of the FFDCA and the Sherman Law including:

a.   21 U.S.C. § 343(a)(1) and HSC § 110660, which deem food misbranded when its label is "false or misleading in any

16

particular";

    b.    21 U.S.C. § 343(i) and HSC § 110720, which prohibit labeling that does not contain a truthful and non-misleading "common or usual name";

    c.    21 C.F.R. § 101.18(b), which recognizes that "labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling";

    d.    21 C.F.R. § 102.5(a), which requires a food's "common or usual name" to "accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients"; and

    e.    21 C.F.R. § 102.5(b), which requires a food's "common or usual name" to "include the percentage(s) of any characterizing ingredient(s) [] when the proportion of such ingredient(s) [] in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) [] is present in an amount greater than is actually the case."

112.   Defendant's conduct is "unlawful" because it violates California's False Advertising Law, BPC § 17500, *et seq.* ("FAL"), and Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA").

113.   Each of the challenged statements and omissions made and actions taken by Defendant as described violates the FFDCA, Sherman Law and FAL, and therefore violates the "unlawful" prong of the UCL.

114.   Defendant's conduct was and continues to be unfair and fraudulent because it made materially false representations and omissions that caused consumers to believe that the Product contained avocado oil beyond a negligible or de minimis amount in absolute and relative terms compared to other less desired vegetable oils like palm oil, soybean oil and canola oil.

115.   Defendant is aware that consumers prefer avocado oil to the other vegetable oils in the Product.

116.   Plaintiffs believed the Product contained more than a de minimis or negligible amount of avocado oil in absolute and relative terms.

117.   Plaintiffs believed the Product contained a predominant amount of avocado oil relative to other vegetable oils used.

118.   Plaintiffs paid more for the Product, would not have purchased it or paid as much if they knew that it did not contain a predominant amount of avocado oil nor more than a de minimis amount, and that avocado oil was present in the smallest amount of the vegetable oil blend.

119.   Plaintiffs will produce evidence showing how they and consumers paid more than they otherwise would have paid for the Product, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, and other advanced methodologies.

120.   In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence corrective advertising.

**SECOND CLAIM**
**Violation of California's False Advertising Law,**
**Cal. Bus. & Prof. Code § 17500, *et seq.***

121.   Plaintiff repeats and re-alleges the allegations in the paragraphs above as

18

1  if fully set forth herein.

2  122.  The FAL prohibits "mak[ing] any false or misleading advertising claim."

3  123.  Defendant makes "false [and] misleading advertising claim[s]" by

4  deceiving consumers about the relative and absolute amount of avocado oil compared

5  to the other vegetable oils used.

6  124.  Defendant makes "false [and] misleading advertising claim[s]" by

7  deceiving consumers that avocado oil is predominant compared to other vegetable

8  oils used.

9  125.  In reliance on this false and misleading advertising, Plaintiffs purchased

10  and consumed the Product without knowledge it contained a de minimis or negligible

11  absolute and relative amount of avocado oil, and that avocado oil was present in the

12  smallest amount compared to the other vegetable oils used.

13  126.  Defendant knew or should have known that its representations and

14  omissions were likely to deceive consumers.

15  127.  Plaintiffs and Class Members seek injunctive and equitable relief,

16  restitution, and an order for the disgorgement of the funds by which Defendant was

17  unjustly enriched.

18  **THIRD CLAIM**
**Violation of California's Consumers Legal Remedies Act,**
19  **Cal. Civ. Code § 1750, *et seq.***

20  128.  Plaintiff repeats and re-alleges the allegations in the paragraphs above as

21  if fully set forth herein.

22  129.  The CLRA prohibits deceptive practices in connection with the conduct

23  of a business providing goods, property, or services primarily for personal, family, or

24  household purposes.

25  130.  Defendant's policies, acts, and practices were designed to, and did, result

26  in Plaintiffs' purchase, consumption and/or use of the Product primarily for personal,

27  family, or household purposes, and violated and continue to violate sections of the

28  CLRA, including:

a.   Civil Code § 1770(a)(5), because Defendant represented that the Product had characteristics, attributes, features, capabilities, uses, benefits, and qualities it did not have;

b.   Civil Code § 1770(a)(9), because Defendant advertised the Product with an intent not to sell it as advertised; and

c.   Civil Code § 1770(a)(16), because Defendant represented that the Product had been supplied in accordance with its previous representations, when it was not.

131.   Pursuant to Cal. Civ. Code § 1782(a), Plaintiffs have or will send a CLRA Notice to Defendant concurrently with the filing of this action or shortly thereafter, which details and includes these violations of the CLRA, demand correction of these violations, and provide the opportunity to correct these business practices.

132.   If Defendant does not correct these business practices, Plaintiffs will amend or seek leave to amend the Complaint to add claims for monetary relief, including restitution and actual damages under the CLRA, and injunctive relief to enjoin the unlawful methods, acts and practices alleged, pursuant to Cal. Civ. Code § 1780.

**FOURTH CLAIM**
**Breach of Express Warranty**

133.   Plaintiff repeats and re-alleges the allegations in the paragraphs above as if fully set forth herein.

134.   The Product made affirmations of fact that avocado oil was present beyond a negligible or de minimis amount through "Made With Avocado Oil" and "With Avocado Oil," next to pictures of avocados in light green packaging.

135.   The Product was described as "Made With Avocado Oil" and "With Avocado Oil," understood by Plaintiffs and consumers as containing a predominant amount of avocado oil.

136.   Defendant directly marketed the Product to Plaintiffs through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

137.   The Product did not conform to this warranty because the amount of avocado oil was less than the other vegetable oils used.

138.   Plaintiffs recently became aware of Defendant's breach of the Product's warranties.

139.   Plaintiffs provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

140.   Defendant received notice and should have been aware of these issues due to complaints by third parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of herself and members of the proposed Class, pray for judgment and relief as follows:

A.   Certification of the Class, designating Plaintiffs as representatives and Plaintiffs' Counsel as counsel for the Class;

B.   A declaration that Defendant has committed the violations alleged;

C.   For injunctive relief the Court deems appropriate;

D.   For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and Cal Civ. Code § 1780, except for monetary damages under the CLRA;

E.   Compensatory damages, the amount to be determined at trial, except for monetary damages under the CLRA;

F.   For attorneys' fees;

G.   For costs of suit incurred;

H.   For pre- and post-judgment interest; and

21

I.      For such further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on all causes of action so triable.

Dated:   January 8, 2024

Respectfully submitted,

*/s/ Manfred P. Muecke*

Manfred P. Muecke (SBN 222893)
**Manfred APC**
600 W Broadway Ste 700
San Diego CA 92101
Tel: (619) 550-4005
Fax: (619) 550-4006
mmuecke@manfredapc.com

*Counsel for Plaintiffs*

22